IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

RICKY J. JOHNSON,           **:**

                            **:**

           **Plaintiff,**        **:**

                            **:**       **CASE NO. 5:16-CV-00453-CAR-MSH**

VS.                  **:**

                            **:**

HOMER BRYSON, *et al.*,      **:**

                            **:**

           **Defendants.**     **:**

_____

## ORDER AND RECOMMENDATION

In accordance with the Court's previous order, Plaintiff Ricky J. Johnson, a prisoner currently confined in the Jenkins Correctional Facility in Millen, Georgia, has paid the required initial partial filing fee.  Because Plaintiff is a prisoner "seeking redress from a governmental entity or [an] officer or employee of a governmental entity," the Court is now required to conduct a preliminary screening of his Complaint.  *See* 28 U.S.C. § 1915A(a).  Having done so, the undersigned finds that Plaintiff's Eighth Amendment denial of medical treatment claims against all Defendants may proceed for further factual development.   The undersigned **RECOMMENDS**, however, that Plaintiff's claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, be **DISMISSED without prejudice.**

## PRELIMINARY SCREENING

### I.    Standard of Review

When conducting preliminary screening under 28 U.S.C. § 1915A, the Court must

accept all factual allegations in the complaint as true.  *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).  *Pro se* pleadings, like the one in this case, are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  *Id.* (internal quotation marks omitted).  Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact."  *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted).  The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless."  *Id.* (internal quotation marks omitted).   A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action."  *Twombly*, 550 U.S. at 555 (first alteration in original).  In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim.  *Id.* at 556.   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or

2

omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law.  *Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal.  *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II.    Factual Allegations

According to the Complaint, Plaintiff was diagnosed with Hepatitis C in 2009, while imprisoned at the Wilcox State Prison.  Compl. 5, ECF No. 1.  A prison doctor monitored Plaintiff's condition through blood tests for approximately two and a half years while he was incarcerated at Wilcox State Prison and ultimately scheduled a liver biopsy for Plaintiff.  *Id.*  After results from the liver biopsy were received, the Wilcox State Prison doctor "scheduled a visit with the H.C.V. 340(b) clinic."  *Id.*  Before Plaintiff could visit the clinic, however, he was transferred to Hays State Prison in Trion, Georgia. *Id.*

While at Hays State Prison, Plaintiff had a "telemed" meeting with Defendant Dr. Chaudray.  Defendant Chaudray assured Plaintiff that treatment would begin soon.  *Id.* Before treatment began, however, Plaintiff was transferred to the Ware State Prison.  *Id.* While at the Ware State Prison, Defendant Dr. Ferrell again informed Plaintiff that "he would be enrolled in the CCC HCV program," but Plaintiff was never enrolled therein and apparently received no other treatment.  *Id.*  Plaintiff was then transferred to Forsyth County for approximately three months to stand trial on his outstanding charges, after

which he was returned to Ware State Prison.  *Id.*

In May of 2014, while imprisoned at Ware State Prison, Plaintiff began to complain that he was being denied treatment for Hepatitis C that had already been prescribed and approved, presumably by the doctor at the Wilcox State Prison.  *Id.*   Defendant Chaudray informed Plaintiff that if he was "patient he would receive the more advanced treatment as costs went down."  *Id.* at 5.   Dr. Chaudray also ordered a follow-up liver biopsy, which has not yet been performed.  *Id.*   Plaintiff was then transferred to Jenkins Correctional Facility in Millen, Georgia.  *Id.* at 5-6.   Jenkins Correctional Facility is operated by Corrections Corporation of America ("CCA").  *See id.* at 5.

While at the Jenkins Correctional Facility, Plaintiff continued to request treatment for Hepatitis C.  *Id.* at 6.   Although the prison physician initially told Plaintiff that CCA would not provide treatment, when Plaintiff informed the physician that treatment had already been prescribed, the physician agreed to "consult with D.O.C. officials in Atlanta, Ga."  *Id.*   In June of 2016, however, Plaintiff was finally informed that he would not receive treatment for Hepatitis C.  *Id.* at 7.

Plaintiff alleges that Defendants' failure to provide him with adequate medical care for his Hepatitis C violates his constitutional rights.  In addition, Plaintiff alleges that Defendants have denied him the ability to participate in programs offered by the Georgia Department of Corrections because of his medical condition.  *Id.* at 8.   As a result of these alleged constitutional and statutory violations, Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages.  *Id.* at 11.

### III.   Plaintiff's Claims

A.        Medical Treatment Claims

The bulk of Plaintiff's Complaint centers on his contention that Defendants failed to provide him adequate care for his medical condition.   A prisoner who demonstrates that a prison official was deliberately indifferent to his serious medical needs can state a claim under the Eighth Amendment.   *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry."   *Id.* at 1243.   A plaintiff must first "set forth evidence of an objectively serious medical need," and must also "prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need."   *Id.*   In other words, prison officials must both "know of and then disregard an excessive risk to the prisoner."   *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam).

Plaintiff has alleged that he had been diagnosed with Hepatitis C.   This allegation is sufficient to establish that he was suffering from an objectively serious medical need.   *See Farrow*, 320 F.3d at 1243 (defining "serious medical need" as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" (internal quotation marks omitted)); *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (finding that Hepatitis diagnosis constituted serious medical need); *see also Black v. Ala. Dep't Corr.*, 578 F. App'x 794, 795 (11th Cir. 2014) (per curiam) ("Although Hepatitis C often has no symptoms, chronic infection can lead to liver damage, cirrhosis, liver cancer, and liver

5

failure.").   To state a claim upon which relief may be granted, however, Plaintiff must also allege that each named Defendant was deliberately indifferent to his serious medical needs.

In this case, Plaintiff has essentially alleged that prison physicians and administrators have avoided treating Plaintiff's chronic Hepatitis C infection because the standard treatment is too expensive.   This can constitute deliberate indifference actionable under § 1983.   *See Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (prison officials' decision to take an "easier or less efficacious course of treatment" can constitute deliberate indifference); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("[I]f necessary medical treatment has been delayed for non-medical reasons, a case of deliberate indifference has been made out.").

It is somewhat unclear from Plaintiff's pleadings which Defendants were involved in the decision to deny the prescribed treatment.   Construing Plaintiff's Complaint liberally, as the Court must at this stage of the litigation, the undersigned concludes that Plaintiff's medical deliberate indifference claims may proceed against each of the named Defendants.   This case "involve[s] claims relating to conditions or practices which, if they in fact do exist, would very likely be known to, or acquiesced in, by officials at a relatively high administrative level."   *Duncan v. Duckworth*, 644 F.2d 653, 656 (7th Cir. 1981). Under such circumstances, the Eleventh Circuit has observed that it is reasonable for a *pro se* prisoner to name such "high ranking prison officials" who "are in a position to identify the individuals who are actually and directly responsible" for the alleged constitutional violations; even if these prison officials were not actually and directly involved, they may assert their noninvolvement and identify the responsible parties.   *Brown v. Sikes*, 212 F.3d

6

1205, 1208-09 (11th Cir. 2000).

In this case, Plaintiff has named as Defendants (1) Doctors Chaudray, Mohammad, Ferrell, and Marler, the prison physicians responsible for treating Plaintiff or for overseeing his care; (2) the wardens of the prisons where Plaintiff was denied treatment; (3) Lewis and Bryson, the medical director and commissioner of the Georgia Department of Corrections; and (4) Turner, the regional director of the private corporation which manages the Jenkins Correctional Facility.   Each of these Defendants is presumably responsible for making decisions and/or implementing policies regarding Plaintiff's medical care and any applicable budgetary constraints.[1]   Given the Court's obligation to construe Plaintiff's *pro se* Complaint liberally, the undersigned will permit Plaintiff's Eighth Amendment claims to proceed against each of the named Defendants in this case.

B.      ADA Claims

Plaintiff also appears to allege that Defendants violated his rights under the ADA. ECF No. 1 at     Title II of the ADA prohibits public entities from discriminating against disabled individuals, and it applies to prisoners in state correctional facilities.  *See, e.g., Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).   Plaintiff here specifically alleges that he has been "refused participation in Georgia Dept. of Corrections (D.O.C.) programs including work programs at 'County Camps'" because of his Hepatitis C

---

[1]Plaintiff alleges that Defendant Lewis also denied at least one of Plaintiff's grievances regarding his lack of treatment, and Plaintiff's Complaint also suggests Defendant Lewis made the final decision to deny Plaintiff treatment while he was in the Jenkins Correctional Facility.  *See* ECF No. 1 at 6-7.  Plaintiff has further alleged that Defendants—including the wardens and GDC administrators—repeatedly transferred him throughout the GDC prison system in an effort to deny him treatment (or avoid paying for the same), although he is unsure who actually effectuated the transfers.  *Id.* at 9.

diagnosis.   ECF No. 1 at 7-8.   This conclusory allegation, standing alone, is not sufficient

to state an ADA claim upon which relief may be granted.

To state a claim under Title II, a plaintiff must establish:

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Redding v. Georgia*, 557 F. App'x 840, 844 (11th Cir. 2014) (per curiam) (internal

quotation marks and citation omitted).   The ADA defines a disability as "a physical or

mental impairment that substantially limits one or more major life activities" of an

individual; "a record of such an impairment," or "being regarded as having such an

impairment."   42 U.S.C. § 12102(1).   The fact that an individual simply has a physical

impairment, however, does not necessarily mean that the individual has a "disability"

within the meaning of the ADA.   Instead, "[t]he ADA requires that the impairment

substantially limit one or more of the individual's major life activities."   *Gordon v. E.L.*

*Hamm & Assocs., Inc.*, 100 F.3d 907, 911 (11th Cir. 1996).

Plaintiff alleges that in general, "Hepatitis C is a viral infection that causes liver

disease which results in cirrhosis (scarring of the liver) which can be fatal" and that "liver

function" is a "major life activity" for purposes of the ADA.   ECF No. 1 at 7.   A "major

life activity" can include "the operation of a major bodily function."   42 U.S.C. §

12102(2).   Even assuming that "liver function" falls within this category, however,

Plaintiff does not explain how Hepatitis is substantially limiting his liver's function.

Plaintiff lists some of the symptoms with which patients diagnosed with Hepatitis C may

present, but Plaintiff never explains whether he is actually experiencing any of these symptoms personally and, if so, how those symptoms affect him.   Without some allegation that his infection is causing some symptoms that are "substantially limiting" his liver function, Plaintiff cannot state an ADA claim upon which relief may be granted. *See, e.g., Horstkotte v. Comm'r*, Civil No. 08-cv-61-JL, 2009 WL 4907025, at \*5 (D.N.H. Dec. 11, 2009) (plaintiff failed to show that he was disabled pursuant to the ADA where he had been diagnosed with Hepatitis C but was currently in early stages and symptom-free); *Amos v. Corr. Med. Servs., Inc.*, No. 06-cv-1892, 2009 WL 1884142, at \*6 (D.N.J. June 30, 2009) ("[N]umerous courts have held that [Hepatitis C] alone, without a demonstrat[ion] of how it has limited a major life activity, is not enough to qualify as a disability."); *see also Furnish v. SVI Sys., Inc.*, 270 F.3d 445, 450-581 (7th Cir. 2001) (holding that even if "liver function" constituted a "major life activity," the plaintiff's claims would fail because he did not show that his liver function was substantially limited); *cf. also Mitchell v. Williams*, Civil Action No. 6:15-cv-93, 2016 WL 723038, at \*3 (S.D. Ga. Feb. 22, 2016) (plaintiff "plausibly allege[d]" he was disabled by Hepatitis where he alleged "he suffers from symptoms and . . . those symptoms affect his daily activities").   The undersigned accordingly **RECOMMENDS** that Plaintiff's ADA claims be **DISMISSED without prejudice.**

## III.   Conclusion

For the foregoing reasons, the undersigned shall permit Plaintiff's Eighth Amendment claims to proceed against Defendants Lewis, Bryson, Mohammad, Chaudray, Ferrell, Turner, Johnson, Wilcox State Prison Warden Doe, Hays State Prison Warden

Doe, and Marler. The undersigned **RECOMMENDS**, however, that Plaintiff's ADA claims be **DISMISSED without prejudice.**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable C. Ashley Royal, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against the Defendants identified above, it is accordingly **ORDERED** that service be made on Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.   Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.   This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS,
## PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.  A party need not serve the opposing party by mail if the opposing party is represented by counsel.  In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.   If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendants from whom discovery is sought by the Plaintiff.

11

The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.   Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.   The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.   **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.   This 90-day period shall run separately as to Plaintiff and Defendant beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.   No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.   The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:   except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE

(25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.   No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.   Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

## DIRECTIONS TO CUSTODIAN OF PLAINTIFF

The Warden of the institution wherein Plaintiff is incarcerated, or the Sheriff of any county where he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. In accordance with provisions of the Prison Litigation Reform Act, Plaintiff's custodian is authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.

Collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's

lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

The Clerk of Court is **DIRECTED** to send a copy of this Order to the business manager at

Plaintiff's place of incarceration.

## PLAINTIFF'S OBLIGATION TO PAY FILING FEE

Pursuant to provisions of the Prison Litigation Reform Act, in the event Plaintiff is

hereafter released from the custody of the State of Georgia or any county thereof, he shall

remain obligated to pay any balance due on the filing fee in this proceeding until said

amount has been paid in full; Plaintiff shall continue to remit monthly payments as

required by the Prison Litigation Reform Act. Collection from Plaintiff of any balance due

on the filing fee by any means permitted by law is hereby authorized in the event Plaintiff

is released from custody and fails to remit payments.   Plaintiff's Complaint is subject to

dismissal if he has the ability to make monthly payments and fails to do so.

SO ORDERED AND RECOMMENDED, this 19th day of June, 2017.

S/Stephen Hyles
UNITED STATES MAGISTRATE JUDGE