# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **RICKY J. JOHNSON,** *Plaintiff,* v. **Doctor SHARON LEWIS,** *et al.,* *Defendants.* | **CIVIL ACTION NO. 5:16-cv-00453-TES-MSH** |

### ORDER GRANTING DEFENDANT MARLER'S
### MOTION FOR JUDGMENT ON THE PLEADINGS

After remand from the Eleventh Circuit, Defendant Kevin Marler filed a post-appeal Motion for Judgment on the Pleadings [Doc. 240] pursuant to Federal Rule of Civil Procedure 12(c). *Johnson v. Lewis*, 83 F.4th 1319 (11th Cir. 2023). Defendant Marler argues that Plaintiff Ricky Johnson failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, with respect to Plaintiff's claims against him regarding Plaintiff's treatment for Hepatitis C.

By way of background, Defendant Marler is "the medical director and physician" at Jenkins Correctional Facility, a privately operated prison in Millen, Georgia. [Doc. 157, Marler Aff., ¶ 2]. Prior to the Court's initial entry of Judgment [Doc. 179] and Plaintiff's appeal to the Eleventh Circuit, Defendant Marler sought summary judgment on the same general basis—PLRA exhaustion. [Doc. 145, pp. 7–9]. His

summary-judgment motion also included merits-based arguments against Plaintiff's claims in addition to arguments concerning exhaustion. [*Id.* at pp. 9–15]. But, for some reason or another, Defendant Marler didn't argue PLRA exhaustion quite as vigorously as he does now. After Defendant Marler complied with an order to supplement the record issued by the United States Magistrate Judge assigned to this case, the Magistrate Judge recommended that Defendant Marler's summary-judgment motion on exhaustion grounds be denied because he failed to meet his burden of showing that Plaintiff had not exhausted. [Doc. 153, pp. 6–7]; [Doc. 157]; [Doc. 171, pp. 31–34]. As Plaintiff points out, Defendant Marler did not object to the Magistrate Judge's recommendation to deny summary judgment based on a lack of exhaustion. [Doc. 265, p. 9]. The Court later adopted the Magistrate Judge's recommendation as to Defendant Marler's substantive grounds for summary judgment, and it ultimately dismissed this case in its entirely. [Doc. 178]. Then, the Eleventh Circuit affirmed in part and reversed in part that ruling. [Doc. 159]; *see also Johnson*, 83 F.4th 1319.

After the Eleventh Circuit issued its Mandate [Doc. 198] returning jurisdiction to this Court, the Court issued an Order for Pretrial Conference [Doc. 199] to ready this case for trial. Even though "the Court ha[d] already *afforded [him ample] opportunity* to provide supporting evidence [as to an] exhaustion defense," Defendant Marler—taking advantage of the gracious drafting of the rule—moved for leave to file a Rule 12(c)-based dispositive motion to take another stab at that defense. Fed. R. Civ. P. 12(c); [Doc.

2

171, p. 32 (emphasis added)]; [Doc. 224]. Now, represented by counsel since his case was on appeal, Plaintiff vigorously opposed Defendant Marler's last-ditch effort to avoid going to trial. [Doc. 232]. Jury selection and trial are scheduled to begin on March 4, 2024. [Doc. 214].

On January 23, 2024, the Court held a telephone conference regarding, *inter alia*, Defendant Marler's request for leave to move for dismissal under Rule 12(c). [Doc. 239]. Under that rule, a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). After making Defendant Marler aware that his tactics were frustrating to say the least, the Court was adamant that whatever he filed was not going to delay trial. Nevertheless, the Court determined that the text of Rule 12(c) undoubtedly permitted his strategic maneuver. So, the Court granted him leave. [Doc. 236, p. 1]; [Doc. 237, p. 1]. However, to make sure there was absolutely no chance of *any* delay of the trial, the Court ordered Defendant Marler to file his motion by the close of business the very next day. [Doc. 236, p. 1]; [Doc. 237, p. 1]. After the Court granted a brief extension of time—to file it by midnight instead of by close of business—Defendant Marler filed his motion on January 24, 2024, and moved for judgment on the pleadings under Rule 12(c).[1] [Doc. 237, p. 1]; *see generally* [Doc. 240]. Before turning to the merits of Defendant Marler's motion, the Court addresses two threshold issues: first, why his motion is not barred by the "law of

---

[1] Plaintiff filed his Response [Doc. 265] on February 14, 2024.

3

the case" doctrine; and second, why he may assert his exhaustion defense in a motion for judgment on the pleadings at such a late stage.

### 1. Law of the Case

In his Response to Defendant Marler's motion, Plaintiff begins by arguing that Defendant Marler may not reassert his exhaustion defense because it is barred by the law-of-the-case doctrine. [Doc. 265, pp. 10–14].[2] Plaintiff's second argument, of course, addresses the merits of Defendant Marler's exhaustion defense, which the Court, in applying *Turner v. Burnside*, addresses below. 541 F.3d 1077 (11th Cir. 2008). As to the law of *this* case, Plaintiff is incorrect, for two reasons.

First, regarding Defendant Marler's exhaustion defense, there is no "law of the case" in *this* case. "Under the . . . doctrine, both the district court and the appellate court are generally bound by a prior *appellate* decision of the same case." *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1288 (11th Cir. 2000) (emphasis added) (quoting *Venn v. St. Paul Fire & Marine Ins. Co.*, 99 F.3d 1058, 1063 (11th Cir. 1996)). Importantly, the doctrine "bars consideration of 'only those legal issues that were actually, or by necessary implication, decided in the former proceeding[.]'" *Oladeinde*, 230 F.3d at 1288 (quoting *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 n.3 (11th Cir. 1990)). Here, the Eleventh Circuit never discussed or ruled on Defendant Marler's exhaustion defense, either actually or by necessary implication. In fact, the Eleventh Circuit never even mentioned

---

[2] The Court cites to the page numbers assigned by CM/ECF, not to the pagination on Plaintiff's brief.

4

exhaustion in its opinion. *See generally Johnson*, 83 F.4th 1319.

Second, "a court's previous rulings may be reconsidered as long as the case remains within the jurisdiction of the district court." *Vintilla v. United States*, 931 F.2d 1444, 1447 (11th Cir. 1991) (per curiam) (quoting *United States v. Williams*, 728 F.2d 1402, 1406 (11th Cir. 1984)). To be sure, as the Court mentioned earlier, there was a final Judgment in this case, but that Judgment—at least as it applies here—has now been reversed, and this case has returned to the jurisdiction of this Court. [Doc. 179]; [Doc. 185]. As a result, the law-of-the-case doctrine does not bar consideration of a revisited exhaustion defense.

Sure, as briefly mentioned above, Defendant Marler didn't say a word when the Magistrate Judge denied his summary-judgment motion as to his defense of PLRA exhaustion. [Doc. 265, p. 9]. Why didn't Defendant Marler object? Simple: based on the Magistrate Judge's recommendation to grant summary judgment to Defendant Marler on his substantive grounds, he won and was out of the case. [Doc. 171, pp. 34–53]. Too much remained in the air when it came to PLRA exhaustion which is exactly why the Magistrate Judge denied summary judgment on that ground. [*Id.* at pp. 29–34]. However, almost immediately after this case came back from the Eleventh Circuit, Defendant Marler ostensibly realized that the questions and ambiguities surrounding PLRA exhaustion hadn't really been answered or fully addressed either by him or the Court. *See* [*id.* at p. 34]. So, without hesitation, Defendant Marler brought the issue back

5

before the Court in order to get to the bottom of it. Is it late in the game? Yes. Is it frustrating? No doubt. Is Rule 12(c) a permissible avenue for Defendant Marler to revive his defense? By its plain text, it has to be.

2. **Defendant Marler's Motion for Judgment on the Pleadings**

Although Defendant Marler asserts his PLRA exhaustion defense in a motion for judgment on the pleadings under Rule 12(c), the Court must treat it as if it were raised in a Rule 12(b)-based defensive motion. *Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008) (citations omitted). "[E]xhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits." *Id.* at 1374. Therefore, the defense concerning PLRA exhaustion "is not ordinarily the proper subject" for a non-Rule 12(b) motion. *Id.* at 1374–75. "[I]nstead, it 'should be raised in a motion to dismiss[] or be treated as such if raised'" in a non-Rule 12(b) motion. *Id.* at 1375; *see also Doe v. Sheely*, 855 F. App'x 497 (11th Cir. 2021) (per curiam) (affirming grant of a motion for judgment on the pleadings for failure to exhaust); *Holland v. Moore*, No. 5:16-cv-88-MTT-CHW, 2017 WL 7049112, at *3 (M.D. Ga. Nov. 8, 2017), *recommendation adopted by* 2018 WL 547231 (M.D. Ga. Jan. 24, 2018) (first citing *Bryant*, 530 F.3d at 1376; and then citing *Brooks v. Warden*, 706 F. App'x 965 (11th Cir. 2017)) ("Although [defendant] raises the defense of failure to exhaust in a motion filed under [Rule] 12(c), the motion is properly 'treat[ed as a] motion . . . brought under Rule 12(b).'"). Thus, it's clear that Defendant Marler may bring this defense in a motion for judgment on the pleadings, rather than in

6

a motion to dismiss.³ [Doc. 145, pp. 7–9]; *see Verbena Prods. LLC v. Beesweet Creations, Inc.*, No. 21-CV-23797-PCH, 2022 WL 18864663, at *2 (S.D. Fla. Apr. 8, 2022) (citing *Fernau v. Enchante Beauty Prod., Inc.*, 847 F. App'x 612, 620 (11th Cir. 2021)) (permitting Rule 12(c) motion after a Rule 12(b) motion). Importantly, in deciding whether prisoners exhaust administrative remedies, a court may consider facts outside of the pleadings and make factual determinations so long as it does not decide the merits and the parties have sufficient opportunity to develop the record. *Bryant*, 530 F.3d at 1375–76.

      **a.**      **The Exhaustion Standards⁴**

Now, onto the Eleventh Circuit's two-step process for deciding PLRA exhaustion defenses. *Turner*, 541 F.3d at 1082. Defendant Marler, like all defendants asserting an exhaustion defense under the PLRA, bears the burden of proving that Plaintiff failed to exhaust his administrative remedies. *Id.*; *Varner v. Shepard*, 11 F.4th 1252, 1258 (11th Cir. 2021) (noting that "defendants have the burden of proof" as to whether a prisoner "exhausted his available administrative remedies").

---

³ In fact, with the Court's permission, Defendant Marler arguably could have filed another motion for summary judgment which—in applying *Bryant*—would just route the motion as if it was made under Rule 12(b). Fed. R. Civ. P. 56(b); *Fernandez v. Bankers Nat. Life Ins. Co.*, 906 F.2d 559, 569 (11th Cir. 1990) (recognizing that successive motions for summary judgment may be appropriate when discovery has been extended or when the district court has found good reason to allow a second motion); *Bryant*, 530 F.3d 1374–75.

⁴ Notably, a prisoner need only exhaust those administrative remedies which were available to him. The Supreme Court has found three circumstances—known as the *Ross* circumstances—in which administrative remedies are not available to prisoners. *See generally Ross v. Blake*, 578 U.S. 632 (2016). No one has argued that Plaintiff's administrative remedies were not available to him, and a review of the evidence does not show that his administrative remedies were unavailable to him, so the Court does not go further into the *Ross* circumstances.

Under *Turner*, the Court first:

> looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.

541 F.3d at 1082 (citing *Bryant*, 530 F.3d at 1373–74). If, after assuming the plaintiff's allegations are true and the complaint is not dismissed under step one, then the Court proceeds to the second step and must:

> make specific findings in order to resolve the disputed factual issues related to exhaustion . . . . Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Id.* at 1082–83 (citations omitted).

### b.  The Merits of Marler's Motion

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §] 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The long and short of it is this: Plaintiff filed a grievance while incarcerated at Ware State Prison—obviously, a state-run prison—but when he was transferred to Jenkins Correctional Facility (the privately operated prison where Defendant Marler worked), he didn't file another one until much later.

To begin, everyone agrees that Plaintiff did not file a grievance about Defendant Marler prior to commencing this lawsuit. [Doc. 265, p. 8 ("Four months later, after

[Plaintiff] had initiated this action, he filed another grievance pleading (once more) to begin treatment."), p. 15 ("The only question is whether the PLRA also requires [Plaintiff] to have grieved the exact same issue at Jenkins as a precondition for suing [Defendant] Marler.")]. To be sure, as the Magistrate Judge has long since noted, Plaintiff doesn't have to directly name Defendant Marler to exhaust his administrative remedies against him. [Doc. 171, p. 34]; *see also* [Doc. 265, p. 11]. So, the question becomes: Did Plaintiff exhaust his claims against Defendant Marler at Jenkins when he filed his grievance at Ware complaining that the medical staff at *Ware* refused to begin his treatment for Hepatitis C? [Doc. 265, p. 16 ("The HCV Grievance was based on the fact that prison medical staff refused to begin treating [Plaintiff's] HCV.")].

The Eleventh Circuit has previously held—under the facts of that case—that an inmate was not required to file new grievances that addressed subsequent acts by officials which were a continuation of an issue that had been raised in a prior grievance. *Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010). The prisoner, Parzyck, filed a grievance complaining that he had been waiting for an orthopedic consultation, and he was told that his medical chart would be reviewed. *Id.* at 1218. When he still did not receive a referral for the consultation, Parzyck filed a grievance appeal. *Id.* While the grievance appeal was pending, a new doctor—Dr. Cherry—was appointed as the chief health officer, and Parzyck again requested the consultation, which was denied by Dr. Cherry. *Id.* Parzyck's grievance appeal was denied on the

9

ground that it was Dr. Cherry's responsibility, as the chief health officer, to determine appropriate treatment for him. *Id.*

Relevant here, Parzyck subsequently filed a federal lawsuit. *Id.* The district court found that, because Parzyck's original grievance only addressed issues which occurred *before* the appointment of Dr. Cherry, Parzyck failed to exhaust his administrative remedies against Dr. Cherry. *Id.* The Eleventh Circuit reversed based on the particular facts of the case. *Id.* The court found that Parzyck's first grievance alerted prison officials to the problem, and it gave them an opportunity to address the problem before Parzyck could sue, which was all that the PLRA's exhaustion requirement was designed to accomplish. *Id.* at 1219. Thus, Parzyck had exhausted his administrative remedies against Dr. Cherry. *Id.* In this case, despite Plaintiff's assertion to the contrary, however, the Court cannot use a "straightforward application of *Parzyck*" to find that his grievance from Ware was "on the exact *same* issue" as his grievance at Jenkins such that he exhausted his administrative remedies against Defendant Marler. [Doc. 265, p. 16 (quoting *Parzyck*, 627 F.3d at 1219)].

To begin, *Parzyck* only addressed the facts of that case. Its effect as binding precedent is thus somewhat limited, unless the facts of this case are materially indistinguishable. The facts of this case, however, are distinguishable. Parzyck remained in the same prison, despite Dr. Cherry being appointed chief health officer during the pendency of his grievance appeal. Here, Plaintiff was transferred to a new

10

prison long after he filed his initial grievance, where he faced an entirely different prison administration and team of medical personnel. Notably, Parzyck's appeal was denied on the ground that Dr. Cherry was responsible for the inmate's care and treatment, and Dr. Cherry was given an opportunity to respond to Parzyck's request because he personally denied a subsequent request by Parzyck *before* Parzyck filed his lawsuit. Here, Plaintiff's grievance from Ware did not reference Defendant Marler because he had not yet been under his care, and there is no evidence to suggest that Defendant Marler had been given an opportunity to respond to Plaintiff's complaints before he filed this lawsuit.

Not only that, but the type of relief requested by Plaintiff differs from the relief sought by Parzyck. Parzyck requested the exact same relief repeatedly throughout the grievance process, and in his request to Dr. Cherry, he wanted an orthopedic consultation. *Parzyck*, 627 F.3d at 1218. Here, Plaintiff's initial grievance was a general grievance seeking to have his Hepatitis C treatment started while at Ware. [Doc. 240-5, p. 1]; [Doc. 265, p. 16]. It did not—and could not—address issues at Jenkins because Plaintiff had yet to be transferred there. In fact, when Plaintiff finally did file a grievance about Defendant Marler—nearly a year after he filed suit—he acknowledged that "medical" *had* been treating him since his arrival at Jenkins by "conducting blood tests and monitoring to ensure that [his] medical condition (Hepatitis C) would not develop [into] cirrhosis" of the liver. [Doc. 240-8, p. 15]. More than a general grievance

11

seeking to have treatment commenced, Plaintiff was seeking a consultation with "a medical specialist in the field of hematology (disease of the liver)," and to have the already prescribed treatment begun, among other things. [*Id.*]. Sure, the common denominator—beginning treatment for Hepatitis C—underlying both the Ware and Jenkins grievances remained the same. *Compare* [Doc. 1-1] *with* [Doc. 240-8, p. 15]. However, Plaintiff's specific requests made in the Jenkins grievance, along with his serious disease progression, are a far cry from the general request to begin treatment in the first place. So, contrary to Plaintiff's contention as to why *Parzyck* directly governs his case—because there is a "continuation of a problem already raised in an earlier grievance"—his grievance at Jenkins simply "raised" different, more specific issues that his "earlier grievance" from Ware didn't address. [Doc. 265, p. 15 (quoting *Parzyck*, 627 F.3d at 1219)]. But there are other significant and substantial differences between the two grievances.

The time and place where the two inmates grieved their complaints are materially different as well. From the time Parzyck filed his first informal grievance to the time his grievance appeal was decided, only about four months had passed, and Dr. Cherry was appointed roughly at the midpoint. *Parzyck*, 627 F.3d at 1218. Parzyck filed his federal lawsuit two months after the resolution of his appeal. *Id.* In contrast, Plaintiff filed his first, general grievance at Ware in May 2014. [Doc. 240-5, p. 1]. One year later, in May 2015, Plaintiff transferred to Jenkins. [Doc. 1, p. 3]. Nearly 15 months after his

12

transfer, Plaintiff filed his Complaint [Doc. 1] in October 2016. [*Id.* at p. 12]. In all, two years and five months passed from the time Plaintiff filed his first, general grievance at Ware to the time he filed this lawsuit. Beyond the significant differences in the timing of the grievances, Plaintiff transferred to an entirely different, privately run prison facility, with a different medical team and prison administrators, whereas Parzyck remained in the same facility, and the one new prison administrator—Dr. Cherry—personally denied Parzyck's request for a consultation.

      In summary, significant and material differences exist between the facts of this case and *Parzyck* that prevent *Parzyck* from controlling as precedent. While Parzyck accomplished what was required under the PLRA by giving prison officials the opportunity to resolve his one request before filing a federal lawsuit, Plaintiff did not give prison officials at an entirely different, privately run prison the same opportunity. Again, before initiating this lawsuit, Plaintiff filed a general grievance at a prior prison more than a year before his arrival to a new facility. Not only was Plaintiff's Hepatitis C being monitored by the time he submitted his grievance at Jenkins some three and half years after the Ware grievance, but he sought different relief and was at an entirely different stage of disease progression. [Doc. 240-5, p. 1]; [Doc. 240-8, p. 15]. And, although Defendant Marler certainly had and reviewed Plaintiff's medical file as a result of Plaintiff's transfer from Ware to Jenkins, there is nothing in the relevant Georgia Department of Corrections' Standard Operating Procedures indicating that the

grievance coordinators at state-run prisons, like Ware, are required or obligated to forward grievances from prison to prison or from one prison to "[an]other correctional facility." [Doc. 157, Marler Aff., ¶ 4 ("[Plaintiff's] medical history was notable for his having been diagnosed with Hepatitis C in 2012, while at a Georgia Department of Corrections facility.")]; [Doc. 240-6, p. 15 (discussing "Administration and Record-keeping for the Grievance Procedure")]; 42 U.S.C. § 1997e(a).

Assuredly the Court recognizes that *Parzyck* stands for the proposition that inmates are not required to "file new grievances addressing every subsequent act by a prison official that contributes to the continuation of a problem already raised in an earlier grievance." 627 F.3d 1219. But again, that holding is limited to intraprison grievances *at one prison*. *See Diamond v. Owens*, 131 F.Supp.3d 1346, 1363 (M.D. Ga. 2015) (discussing limited holdings upon which the Eleventh Circuit based *Parzyck*). For Defendant Marler to become aware of Plaintiff's treatment-related concerns *after* Plaintiff commenced this lawsuit is precisely what the PLRA was designed to prevent. And, since grievances filed at Ware are supposed to be "retained *at the institution*," there was no way for Defendant Marler to have been put on notice of *that* exhausted grievance (related to a lack of immediate treatment) and thereby address Plaintiff's concerns without knowing about it. [Doc. 240-6, p. 15 (requiring electronic grievances to have "similar restricted access" as paper copies of grievances "retained *at the institution*") (emphasis added)]; [Doc. 240-5, p. 1]. After all, the purpose of grievance

14

exhaustion is to alert a prison or a prison official of alleged wrongdoing so that there's an opportunity to redress the issue without being hauled into federal court. *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004).

With respect to Defendant Marler, that's not what happened. It was the inverse. Plaintiff even admits that since he arrived at Jenkins "medical ha[d] been conducting blood tests and monitoring" his Hepatitis C. [Doc. 240-8, p. 15]. There was no way that Defendant Marler could have known exactly what Plaintiff had grieved while at Ware in order to avoid being sued. *See Pinson v. St. John*, No. 1:10–cv–01832–RBP–HGD, 2013 WL 765639, at *1 (N.D. Ala. Feb. 25, 2013) ("[I]t is axiomatic that [a prisoner] cannot . . . claim exhaustion by referring to a grievance process that occurred at a wholly different location and involved [different] individuals[.]"). The differences discussed above simply require a different, more up-to-date grievance to get Defendant Marler up to speed about what Plaintiff is grieving as well as provide him with an opportunity to address Plaintiff's most recent health concerns—the exact point of the exhaustion requirement in the PLRA. This brings the Court to its next point.

The United States District Court for the Middle District of Georgia has already addressed nearly this exact issue. In that case, an inmate sought treatment at two different facilities but only filed a grievance at the first facility. *Diamond*, 131 F. Supp. 3d at 1359. The court considered *Parzyck* in relation to the prison officials in the second facility, against whom the inmate had not filed grievances. *Id.* at 1362–63. While the

15

court acknowledged that "conduct of the same general type also occurred at" the second facility, the grievance filed at the first facility "did not provide facts connecting prison officials at the [second facility] with the problem or otherwise put prison officials on notice of an internal problem at" the second facility. *Id.* at 1363 (citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1324 (11th Cir. 2007)) ("[T]he exhaustion requirement in the PLRA seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case[.]"). Thus, the court found that the first facility grievance did not provide the opportunity to address the problem that became the basis of the claims for the federal action. *Diamond*, 131 F.3d at 1363. Having considered the reasoning of *Diamond*, the Court adopts it as its own.

    The Court is aware of only two other cases of arguable relevance, both of which come to the opposite conclusion. Both cases, however, are distinguishable. The first, in the United States District Court for the Northern District of Florida, found the inmate had exhausted for two reasons, despite his transfer between facilities. *Johnson v. Fla. Dep't of Corr.*, 826 F. Supp. 2d 1319 (N.D. Fla. July 20, 2011). The court first found that the inmate's appeal to the Secretary of the Florida Department of Corrections fully exhausted the inmate's grievance as to any facility he might have been subsequently transferred because the Secretary had "ultimate responsibility for grievances" within the Department of Corrections. *Id.* at 1323–24. Tempting as that reasoning may be, especially given the Northern District of Florida's reliance on *Parzyck*, the Court

disagrees that an appeal to the Commissioner in this case effectively exhausted Plaintiff's grievance regardless of where or when he was transferred. The Eleventh Circuit has never held that an exhausted grievance appeal at one institution globally exhausts that issue regardless of future transfers to others.[5] And finally, the Northern District of Florida also found that the relief the inmate sought at the second facility was the same relief he sought at the first facility. *Id.* at 1324. This Court, however, has already determined that Plaintiff did not request the same relief at both facilities.

The second case is from the United States Court of Appeals for the Second Circuit. *Johnson v. Killian*, 680 F.3d 234 (2d Cir. 2012) (per curiam). In that case, a Muslim inmate complained about a new prison policy that restricted his ability to pray with a congregation. *Id.* at 236. The inmate filed and exhausted a grievance in 2005, and soon after, the prison stopped enforcing the policy. *Id.* at 236–37. In 2007, however, a new warden was appointed who reimplemented the policy. *Id.* at 237. The inmate filed a federal complaint in 2007 without filing a new grievance. *Id.* The Second Circuit held that the inmate had exhausted his administrative remedies against the new warden because the issue he would have grieved in 2007 was identical to the issue he exhausted in 2005. *Id.* at 238–39. Again, this Court has already determined that Plaintiff's complaints about Defendant Marler were not identical to those he grieved while at

---

[5] In other words, the Eleventh Circuit has never held that an exhausted grievance from one institution automatically follows a prisoner to all other institutions such that all other institutions are informed of the grieved issue if that inmate is later transferred.

17

Ware. And, the Second Circuit was not addressing a change in prisons: the inmate was in the same prison facility, and the warden—as the new prison administrator—was the only change in the mix.

In the end, everyone agrees Plaintiff did not file a grievance about Defendant Marler after his transfer to Jenkins before he filed his Complaint. Thus, the Court now finds that Plaintiff failed to exhaust his administrative remedies as to Defendant Marler, and he is entitled to dismissal under the PLRA.

### 3. Conclusion

Consistent with the above rulings, the Court **GRANTS** Defendant Kevin Marler's Motion for Judgment on the Pleadings [Doc. 240] and **DISMISSES** Plaintiff's claims asserted against him. The Court **DIRECTS** the Clerk of Court to **TERMINATE** Defendant Kevin Marler accordingly.

**SO ORDERED**, this 23rd day of February, 2024.

S/ Tilman E. Self, III  
**TILMAN E. SELF, III, JUDGE**  
**UNITED STATES DISTRICT COURT**